UNITED STATES DISTRICT COURT
District of Minnesota

UNITED STATES OF AMERICA,

Plaintiff,

v.

(1) USAMA DARWICH HAMADE
   a/k/a Prince Sam Hamade, and

(2) SAMIR AHMED BERRO,

Defendants.

INDICTMENT CR 15-237 MJD/BRT

18 U.S.C. § 371
(ILLEGAL EXPORT CONSPIRACY)

THE UNITED STATES GRAND JURY CHARGES THAT:

1.     At all times relevant to this Indictment, defendant Usama Darwich Hamade was a citizen of Lebanon residing in the Republic of South Africa.

2.     At all times relevant to this Indictment, defendant Samir Ahmed Berro was a citizen of Lebanon residing in Lebanon.

3.     At all times relevant to this Indictment, defendant Samir Ahmed Berro controlled SAB Aerospace, a company domiciled and doing business in the United Arab Emirates.

4.     At all times relevant to this Indictment, Individual A was a citizen and resident of the Republic of South Africa who unwittingly assisted Hamade and Berro with the illegal export scheme described below.

5.     At all times relevant to this Indictment, pursuant to authority granted by Congress in the International Emergency Economic Powers Act codified at Title 50,

SCANNED
AUG 1 9 2015
U.S. DISTRICT COURT MPLS

United States Code, Section 1701 *et seq.*, the United States Department of Commerce administered the Export Administration Regulations, codified at Title 15, Code of Federal Regulations, parts 730-774, which prohibited the export of certain goods and commodities to specific countries, absent permission from the United States Department of Commerce in the form of an export license.

6.     At all times relevant to this Indictment, Title 50, United States Code, Section 1705(c), provided that any person who willfully violates any provision of the Export Administration Regulations shall be guilty of a felony.

7.     At all times relevant to this Indictment, the Export Administration Regulations prohibited the export of the Microturbo TRS18 turbojet engine described below (hereinafter, the "Jet Engine") from the United States to Lebanon for any purpose without first obtaining an export license from the United States Department of Commerce.

8.     At all times relevant to this Indictment, the Export Administration Regulations prohibited the export to Lebanon of the following items for use in unmanned aerial vehicles (hereinafter, "UAVs"):

- Honeywell Digital Compass Solution HMR3000 compasses (hereinafter, the "Honeywell Compasses"); and

- Systron Donner Inertial Model MMQG Inertial Measurement Units (hereinafter, the "Systron Donner IMUs") (collectively, the Jet Engine, the Honeywell Compasses and the Systron Donner IMUs shall be referred to herein as the "Commerce-Controlled United States Goods").

2

9.     At all times relevant to this Indictment, the United States Department of State, pursuant to authority granted by Congress in the Arms Export Control Act codified at Title 22, United States Code, Section 2751 *et seq.*, administered the International Traffic in Arms Regulations codified at Title 22, Code of Federal Regulations, parts 120-130, which prohibited the export of "defense articles" from the United States to, among other places, Lebanon, absent permission from the United States Department of State in the form of an export license.

10.     At all times relevant to this Indictment, Title 22, United States Code, Section 2778, provided that any person who willfully violates any provision of the International Traffic in Arms Regulations shall be guilty of a felony.

11.     At all times relevant to this Indictment, the International Traffic in Arms Regulations prohibited the export to Lebanon of Systron Donner Inertial GPS-INS, Model C-MIGITS III, P/N CMIG-310 Inertial Measurement Units ("C-MIGITS IMU"), without obtaining an export license from United States Department of State expressly permitting its export to Lebanon.

## COUNT 1
### 18 U.S.C. § 371
(Conspiracy to Violate the International Emergency Economic Powers Act and the Export Administration Regulations and to Violate the Arms Export Control Act and the International Traffic in Arms Regulations)

12.     From in or about 2009 through at least August 2010, in the State and District of Minnesota and elsewhere, the defendants,

**USAMA DARWICH HAMADE**
a/k/a Prince Sam Hamade, and
**SAMIR AHMED BERRO,**

3

United States v. Usama Darwich Hamade, *et al.*

did unlawfully, willfully and knowingly conspire, combine and agree with each other and with other persons known and unknown to the Grand Jury to

(a)     willfully violate the International Emergency Economic Powers Act and the Export Administration Regulations by exporting and attempting to export from the United States to Lebanon the Commerce-Controlled United States Goods without obtaining the required export licenses from the United States Department of Commerce, all in violation of Title 50, United States Code, Section 1705(c); and

(b)     willfully violate the Arms Export Control Act and the International Traffic in Arms Regulations by exporting and attempting to export to Lebanon a controlled defense article, namely, the CMIGITS IMU, without obtaining the required license from the United States Department of State expressly permitting its export to Lebanon, all in violation of Title 22, United States Code, Section 2778.

## PURPOSE OF THE CONSPIRACY

13.     The purpose of the conspiracy was to export parts and technology from the United States to Lebanon for inclusion in UAVs without obtaining the required export licenses under the Export Administration Regulations or under the International Traffic in Arms Regulations.

## MANNER AND MEANS

14.    It was part of the conspiracy that in October 2009, defendant Hamade directed Individual A to order the Jet Engine from Avon Aero Supply located in the State of Indiana for delivery to defendant Berro at his company, SAB Aerospace, in the United Arab Emirates.    Defendant Berro then illegally transshipped the Jet Engine to coconspirators in Lebanon.  Neither defendant Hamade nor defendant Berro obtained an export license from the United States Department of Commerce before shipping the Jet Engine to either the United Arab Emirates or Lebanon.

15.    It was part of the conspiracy that from in or about October 2009 through August 2010, defendant Hamade directed Individual A to place orders for the Honeywell Compasses and the Systron Donner IMUs for delivery to the Republic of South Africa.

16.    It was part of the conspiracy that defendant Hamade falsely told Individual A that the Honeywell Compasses and the Systron Donner IMUs would be used in UAVs in South Africa to overfly wildlife areas to prevent poaching.

17.    It was part of the conspiracy that Hamade instead illegally transshipped the Honeywell Compasses and the Systron Donner IMUs to coconspirators in Lebanon without obtaining an export license from the United States Department of Commerce.

18.    It was part of the conspiracy that Hamade directed Individual A to order two CMIGITS IMUs from Systron Donner without telling Individual A that Hamade intended to send the CMIGITS IMUs to Lebanon after receiving them in South Africa. As a consequence, Individual A obtained an export license from the United States Department of State which permitted the export of the CMIGITS IMUs to South Africa,

but which did not expressly permit their export to Lebanon, and in fact prohibited their reexport from South Africa without further authorization.

## OVERT ACTS

In furtherance of the conspiracy and to achieve its objects, the defendants committed, directly, through coconspirators, and through Individual A, among other acts, the following overt acts:

19.     On or about October 12, 2009, Individual A ordered, at defendant Hamade's direction, the Jet Engine from Avon Aero Supply Company located in Danville, Indiana.

20.     On or about October 21, 2009 the Jet Engine arrived at defendant Berro's company, SAB Aerospace, in the United Arab Emirates.  The following day, October 22, 2009, defendant Berro caused the Jet Engine to be shipped from SAB Aerospace to a company in Beirut, Lebanon.

21.     On or about October 20, 2009, Individual A ordered, at defendant Hamade's direction, eleven Systron Donner IMUs from Systron Donner Inertial located in California.

22.     On or about October 21, 2009, Individual A ordered, at defendant Hamade's direction, ten Honeywell Compasses from a Honeywell facility located in Plymouth, Minnesota.

23.     On or about May 11, 2010, Individual A ordered, at defendant Hamade's

United States v. Usama Darwich  Hamade, *et al.*

direction, 2 C-MIGITS IMUs from Systron Donner Inertial located in Walnut Creek, California.

All in violation of Title 18, United States Code, Section 371.


A TRUE BILL



_____          _____

UNITED STATES ATTORNEY                    FOREPERSON