UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.: 15-237 (MJD/BRT)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>(1) USAMA DARWICH HAMADE,<br>    a/k/a "Prince Sam" Hamade,<br>(2) SAMIR AHMED BERRO,<br>    a/k/a "Tony," and<br>(3) ISSAM HAMADE,<br><br>Defendants. | **SECOND SUPERSEDING INDICTMENT**<br><br>18 U.S.C. § 371<br>(ILLEGAL EXPORT CONSPIRACY)<br><br>18 U.S.C. § 554<br>(SMUGGLING) |

THE UNITED STATES GRAND JURY CHARGES THAT:

1.  At all times relevant to this Second Superseding Indictment, defendant Usama Darwich Hamade was the brother of defendant Issam Hamade, and was a citizen of both Lebanon and the Republic of South Africa ("South Africa"), residing in South Africa.

2.  At all times relevant to this Second Superseding Indictment, defendant Samir Ahmed Berro was a citizen of both Lebanon and the United Kingdom of Great Britain and Northern Ireland, residing in either Jordan or Lebanon.

3.  At all times relevant to this Second Superseding Indictment, defendant Issam Hamade was the brother of defendant Usama Hamade, and was a citizen of Lebanon, residing in either Lebanon or South Africa.


SCANNED
OCT 11 2017
U.S. DISTRICT COURT MPLS

CASE 0:15-cr-00237-MJD-BRT   Document 22   Filed 10/11/17   Page 2 of 12

United States v. Usama Darwich Hamade, et al.                                Criminal No.: 15-237 (MJD/BRT)

4.     At all times relevant to this Second Superseding Indictment, defendant Samir Ahmed Berro controlled SAB Aerospace, a company domiciled and doing business in Dubai, the United Arab Emirates.

5.     At all times relevant to this Second Superseding Indictment, Hizballah was designated as a "foreign terrorist organization" by the United States Secretary of State pursuant to Section 219 of the Immigration and Nationality Act, 8 U.S.C. Section 1189.

6.     At all times relevant to this Second Superseding Indictment, Individual A was a citizen and resident of South Africa who assisted Usama Hamade, Issam Hamade, and Berro with the illegal export scheme, but who did not fully understand the scheme's illegal purpose.

7.     At all times relevant to this Second Superseding Indictment, Individual B was a resident of Arizona who unwittingly assisted defendants Usama Hamade, Issam Hamade, and Berro with the illegal export scheme.

8.     Company A was a U.S. company, with operations in California, which manufactured and sold inertial measurement units suitable for use in unmanned aerial vehicles ("UAVs"). The inertial measurement units manufactured and sold by Company A included: i) the MMQG Inertial Measurement Unit (the "MMQG IMU"); and ii) the C-MIGITS III Inertial Measurement Unit (the "C-MIGITS IMU") (collectively, the "IMUs").

9.     Company B was a U.S. company with significant operations in the State and District of Minnesota. These operations included, but were not limited to, the manufacture and sale of digital compasses, suitable to be paired with the IMUs manufactured and sold

CASE 0:15-cr-00237-MJD-BRT   Document 22   Filed 10/11/17   Page 3 of 12

United States v. Usama Darwich Hamade, et al.                    Criminal No.: 15-237 (MJD/BRT)

by Company A. The digital compasses manufactured in Minnesota by Company B, and shipped by Company B from Minnesota to customers, included the Digital Compass Solution HMR3000 compasses (hereinafter the "Digital Compasses"). When combined, the Digital Compasses and the IMUs made an inertial guidance system suitable for use in UAVs.

10.  Company C was an Indiana company that sold, among other items, small jet engines suitable for providing propulsion to UAVs. The jet engine models sold by Company C included the TRS18 jet engine (the "Jet Engine").

11.  Company D was a Florida company that sold, among other items, small piston engines suitable for providing propulsion to UAVs. The piston engines sold by Company D included the ZDZ-420-B4, a two-cylinder, four-stroke gasoline engine displacing 420 cubic centimeters (the "Piston Engines").

12.  Company E was a Japanese company that manufactured and sold, among other items, binoculars, including the Model DEV-50 Recording Binoculars (the "Binoculars").

13.  At all times relevant to this Second Superseding Indictment, pursuant to authority granted by Congress in the International Emergency Economic Powers Act codified at Title 50, United States Code, Section 1701 *et seq.*, the United States Department of Commerce administered the Export Administration Regulations, codified at Title 15, Code of Federal Regulations, parts 730-774, which prohibited the export from the United States of certain goods and commodities to specific countries and organizations, absent

permission from the United States Department of Commerce in the form of an export license.

14. At all times relevant to this Second Superseding Indictment, Title 50, United States Code, Section 1705(c), provided that any person who willfully violated any provision of the Export Administration Regulations is guilty of a felony.

15. At all times relevant to this Second Superseding Indictment, the Export Administration Regulations prohibited the export of the Jet Engine from the United States to Lebanon without first obtaining an export license from the United States Department of Commerce, and, because Hizballah was a designated foreign terrorist organization, imposed further prohibitions on the export of the Jet Engine to Hizballah without first obtaining an export license from the United States Department of Commerce expressly authorizing Hizballah as an end user.

16. At all times relevant to this Second Superseding Indictment, because Hizballah was a designated foreign terrorist organization, the Export Administration Regulations prohibited the export from the United States to Hizballah of the Digital Compasses; the MMQG IMUs; the Piston Engines; and the Binoculars, without first obtaining an export license from the United States Department of Commerce expressly authorizing Hizballah as an end user of these items (the Jet Engine, the Digital Compasses, the MMQG IMUs, the Piston Engines, and the Binoculars shall be referred to as the "Commerce-Controlled United States Goods").

<u>United States v. Usama Darwich Hamade, et al.</u>　　　　　　　Criminal No.: 15-237 (MJD/BRT)

17.　At all times relevant to this Second Superseding Indictment, the United States Department of State, pursuant to authority granted by Congress in the Arms Export Control Act, codified at Title 22, United States Code, Section 2751 *et seq.*, administered the International Traffic in Arms Regulations, codified at Title 22, Code of Federal Regulations, parts 120-130, which prohibited the export of "defense articles" from the United States to, among other places, Lebanon, absent permission from the United States Department of State in the form of an export license.

18.　At all times relevant to this Second Superseding Indictment, Title 22, United States Code, Section 2778, provided that any person who willfully violates any provision of the International Traffic in Arms Regulations is guilty of a felony.

19.　At all times relevant to this Second Superseding Indictment, the International Traffic in Arms Regulations prohibited the export to Lebanon of the C-MIGITS IMUs without first obtaining an export license from United States Department of State expressly permitting its export to Lebanon.

### COUNT 1
18 U.S.C. § 371
(Conspiracy to Violate the International Emergency Economic Powers Act and the Export Administration Regulations, and to Violate the Arms Export Control Act and the International Traffic in Arms Regulations)

20.　From in or about 2009 through at least December 2013, in the State and District of Minnesota and elsewhere, the defendants,

**USAMA DARWICH HAMADE,**
a/k/a "Prince Sam" Hamade,
**SAMIR AHMED BERRO,**
a/k/a "Tony," and

5

CASE 0:15-cr-00237-MJD-BRT   Document 22   Filed 10/11/17   Page 6 of 12

United States v. Usama Darwich Hamade, et al.                     Criminal No.: 15-237 (MJD/BRT)

## ISSAM HAMADE,

did unlawfully, willfully and knowingly conspire, combine, and agree with each other and with other persons known and unknown to the Grand Jury to

(a)   willfully violate the International Emergency Economic Powers Act and the Export Administration Regulations by exporting and attempting to export from the United States to Lebanon and to Hizballah the Commerce-Controlled United States Goods without obtaining the required export licenses from the United States Department of Commerce, all in violation of Title 50, United States Code, Section 1705(c); and

(b)   willfully violate the Arms Export Control Act and the International Traffic in Arms Regulations by exporting and attempting to export to Lebanon controlled defense articles, namely, the C-MIGITS IMU, without obtaining the required license from the United States Department of State expressly permitting its export to Lebanon, all in violation of Title 22, United States Code, Section 2778.

### PURPOSE OF THE CONSPIRACY

21.   The purpose of the conspiracy was to export parts and technology from the United States to Lebanon, and specifically to Hizballah, for, among other purposes, inclusion in UAVs, without obtaining the required export licenses under the Export Administration Regulations or under the International Traffic in Arms Regulations.

CASE 0:15-cr-00237-MJD-BRT   Document 22   Filed 10/11/17   Page 7 of 12

United States v. Usama Darwich Hamade, et al.                    Criminal No.: 15-237 (MJD/BRT)

## MANNER AND MEANS

22. It was part of the conspiracy that in October 2009, defendant Usama Hamade directed Individual A to order the Jet Engine from Company C in the State of Indiana for delivery to defendant Berro at his company, SAB Aerospace, in the United Arab Emirates. Defendant Berro then illegally transshipped the Jet Engine to Hizballah coconspirators in Lebanon. Neither defendant Usama Hamade nor defendant Berro obtained an export license from the United States Department of Commerce before shipping the Jet Engine to the United Arab Emirates, Lebanon, or Hizballah.

23. It was further a part of the conspiracy that from in or about September 2009 through November 2009, defendant Usama Hamade directed Individual A to place orders for the Digital Compasses and the MMQG IMUs for delivery to South Africa.

24. It was further a part of the conspiracy that defendant Usama Hamade falsely told Individual A that the Digital Compasses and the IMUs would be used in UAVs in South Africa to overfly wildlife areas to prevent poaching.

25. It was further a part of the conspiracy that defendant Usama Hamade instead illegally transshipped the Digital Compasses and the IMUs to coconspirators in Lebanon and Hizballah without obtaining an export license from the United States Department of Commerce.

26. It was further a part of the conspiracy that, in March and May 2010, Usama Hamade directed Individual A to order two C-MIGITS IMUs from Company A without telling Individual A that defendant Usama Hamade intended to send the C-MIGITS IMUs

CASE 0:15-cr-00237-MJD-BRT   Document 22   Filed 10/11/17   Page 8 of 12

United States v. Usama Darwich Hamade, et al.                    Criminal No.: 15-237 (MJD/BRT)

to Lebanon and Hizballah after receiving them in South Africa. As a consequence, Individual A obtained an export license from the United States Department of State which permitted the export of the C-MIGITS IMUs to South Africa, but which did not expressly permit their export to Lebanon or to Hizballah, and in fact prohibited their re-export from South Africa without further authorization.

27. It was further a part of the conspiracy that, in January of 2010, defendants Issam Hamade and Usama Hamade directed Individual A to obtain an exhaust for the Jet Engine, as it had been shipped to Dubai without an exhaust. Individual A went online, located a suitable exhaust for sale, and purchased it.

28. It was further a part of the conspiracy that, between November 19, 2009 and April 13, 2010, defendant Berro caused Company D to ship 20 Piston Engines, in four separate shipments, first from the State of Florida to another state (in one case, Minnesota), then from that other state to a temporary recipient in Frankfurt, Germany, and thence to SAB Aerospace in the UAE. From there, defendant Berro then illegally caused the Piston Engines to be shipped to Lebanon and Hizballah.

29. It was further a part of the conspiracy that, in December 2013, defendant Usama Hamade directed Individual B to send the Binoculars, manufactured and sold by Company E, to Lebanon via a courier, who flew from Los Angeles to Beirut, Lebanon with the Binoculars. In Lebanon, the Binoculars were delivered to Hizballah.

CASE 0:15-cr-00237-MJD-BRT   Document 22   Filed 10/11/17   Page 9 of 12

United States v. Usama Darwich Hamade, et al.                                   Criminal No.: 15-237 (MJD/BRT)

## OVERT ACTS

30. In furtherance of the conspiracy and to achieve its objects, the defendants committed, directly, through coconspirators, and through Individuals A and B, among other acts, the following overt acts:

31. On or about September 29, 2009, a United Kingdom-based aerospace technology broker, acting on behalf of Individual A, who was in turn acting at the direction of defendant Usama Hamade, purchased the Digital Compasses from Company D. The Digital Compasses were exported from the State and District of Minnesota.

32. On or about October 12, 2009, Individual A ordered, at defendant Usama Hamade's direction, the Jet Engine from Company C.

33. On or about October 20, 2009, Individual A ordered, at defendant Usama Hamade's direction, 11 MMQG IMUs from Company A.

34. On or about October 20, 2009, Individual A ordered, at defendant Usama Hamade's direction, 10 C-MIGITS IMUs from Company A. This order was later lowered from 10 to two C-MIGITS IMUs, which were shipped to South Africa after purchase.

35. On or about October 21, 2009 the Jet Engine arrived at defendant Berro's company, SAB Aerospace, in the United Arab Emirates. On or about October 24, 2009, defendant Berro caused the Jet Engine to be shipped from SAB Aerospace to Hizballah in Lebanon.

36. On or about December 1, 2009, defendant Berro caused Company D to ship five Piston Engines to a temporary recipient in Germany, who shipped the engines onward

CASE 0:15-cr-00237-MJD-BRT   Document 22   Filed 10/11/17   Page 10 of 12

United States v. Usama Darwich Hamade, et al.                    Criminal No.: 15-237 (MJD/BRT)

to SAB Aerospace. From there, defendant Berro illegally caused the five Piston Engines to be shipped to Lebanon and Hizballah.

37.  On or about December 7, 2009, defendant Berro caused Company D to ship five Piston Engines to a temporary recipient located in the State of Minnesota, which then shipped the engines onward to another temporary recipient located in Germany, which shipped the engines onward to SAB Aerospace. From there, defendant Berro illegally caused the five Piston Engines to be shipped to Lebanon and Hizballah.

38.  On or about February 8, 2010, and February 17, 2010, in order to help pay for the C-MIGITS IMUs, defendant Issam Hamade wired a total of approximately US $59,000 from a bank in Beirut, Lebanon to the bank account of a South African company, Deltashelf 03, which was controlled by defendant Usama Hamade, and used as a corporate vehicle for the illegal export conspiracy charged in this Second Superseding Indictment.

39.  On or about April 14, 2011, defendant Issam Hamade transferred by wire, from Beirut to the South African bank account of New Sam's Palace, a business owned by defendant Usama Hamade, approximately $14,965. In the comments section of the wire transfer, defendant Issam Hamade stated that the wired funds were for "family support".

40.  On or about April 14, 2011, defendant Issam Hamade transferred by wire, from Beirut to the South African bank account of New Sam's Palace, a business owned by defendant Usama Hamade, approximately $99,959. In the comment section of the wire, defendant Issam Hamade stated that the wired funds were "to his brothers against buying spare parts".

CASE 0:15-cr-00237-MJD-BRT   Document 22   Filed 10/11/17   Page 11 of 12

United States v. Usama Darwich Hamade, et al.                    Criminal No.: 15-237 (MJD/BRT)

41.     On or about April 13, 2010, defendant Berro caused Company D to ship 10 Piston Engines from Sarasota, Florida to Miami, Florida, and thence to a temporary recipient in Germany, which then shipped the 10 Piston Engines to SAB Aerospace. From there, defendant Berro illegally caused the 10 Piston Engines to be shipped to Lebanon and Hizballah.

42.     On or about December 3, 2013, Individual B, at defendant Usama Hamade's direction, sent one pair of the Binoculars to a United States person located in California, who then, at defendant Usama Hamade's direction, couriered the Binoculars to Lebanon and delivered them to Hizballah.

All in violation of Title 18, United States Code, Section 371.

**COUNT 2**
(18 U.S.C. § 554)
(18 U.S.C. § 2)

On or about December 3, 2013, the defendant,

**USAMA DARWICH HAMADE**,
a/k/a "Prince Sam" Hamade,

aiding and abetting others, known and unknown to the grand jury, and being aided and abetted by others, known and unknown to the grand jury, did knowingly export and send from the United States an article and object, specifically a pair of recording binoculars manufactured by Company E, when such exportation and sending was contrary to a law

CASE 0:15-cr-00237-MJD-BRT   Document 22   Filed 10/11/17   Page 12 of 12

United States v. Usama Darwich Hamade, et al.                    Criminal No.: 15-237 (MJD/BRT)

and a regulation of the United States, in that the defendant did not, prior to exportation and sending, obtain the required export license.

All in violation of Title 18, United States Code, Sections 554 and 2(b).

A TRUE BILL

_____        _____
ACTING UNITED STATES ATTORNEY         FOREPERSON

United States v. Usama Darwich Hamade, et al.                    Criminal No.: 15-237 (MJD/BRT)

12